UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CENTERRA GROUP, LLC,

                                  **Plaintiff/Counter Defendant,**

   vs.                                                  1:23-CV-1391
                                                                  (MAD)
UNITED STATES COURT SECURITY
OFFICERS UNION,

                                  **Defendant/Counter Claimant.**
_____

**APPEARANCES:**                                        **OF COUNSEL:**

**FOX ROTHSCHILD LLP**                 **BRYN F. GOODMAN, ESQ.**
101 Park Avenue – 17th Floor            **TIMOTHY GUMAER, ESQ.**
New York, New York 10178
Attorneys for Plaintiff/Counter Defendant

**COHEN, WEISS & SIMON LLP**        **KATE M. SWEARENGEN, ESQ.**
909 Third Avenue – 12th Floor          **MATTHEW E. STOLZ, ESQ.**
New York, New York 10022-4731
Attorneys for Defendant/Counter Claimant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff/Counter Defendant Centerra Group, LLC ("Plaintiff") commenced this action on November 3, 2023, pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 185 *et seq.*, seeking to modify, correct or vacate an arbitration award. *See* Dkt. No. 1. Currently before the Court are the parties' cross motions for judgment on the pleadings or, in the alternative, for summary judgment. *See* Dkt. Nos. 1, 10 & 11.

### II. BACKGROUND

At all times relevant to the instant action, Plaintiff, pursuant to a contract with the United States Marshals Service ("USMS"), provided court security officers ("CSOs") to perform guard duties at federal courthouses, including, but not limited to, those federal courthouses located in the Northern District of New York. *See* Dkt. No. 10-1 at ¶ 1.[1] As Special Deputy U.S. Marshals, CSOs were required to conform themselves to the written CSO Performance Standard ("Performance Standards") promulgated by the USMS. *See id.* at ¶ 2. The Performance Standards included, among other things, policies prohibiting harassment and unprofessional behavior that applied to Plaintiff's CSOs. *See id.* at ¶ 3. Plaintiff was obligated by the USMS to enforce the Performance Standards. *See id.* at ¶ 4.

Plaintiff, a subsidiary of Constellis, also maintained a written Code of Business Ethics and Conduct (the "Code") that applied to all of its employees, including CSOs. *See id.* at ¶ 5. The Code included, among other things, policies prohibiting harassment and unprofessional behavior that applied to all of its employees, including CSOs. *See id.* at ¶ 6.

Plaintiff and Defendant United States Court Security Officers Union ("Defendant" or "Union") entered into a collective bargaining agreement ("CBA") effective October 1, 2022,[2] that affected the terms and conditions of, among other things, Plaintiff's CSOs that worked at the

---

[1] The facts set forth in this Memorandum-Decision and Order are taken primarily from the parties' statements of material facts and are largely not in dispute. *See* Dkt. Nos. 10-1, 11-7.

[2] Defendant generally admits this statement but denies that the CBA only became effective on October 1, 2022. *See* Dkt. No. 12 at ¶ 7. Defendant contends that the CBA became effective on August 10, 2022. *See* Dkt. No. 11-7 at ¶ 1. While the CBA was signed by the relevant parties on August 9 & 10, 2022, Article 23 of the CBA provides as follows: "This Agreement shall be effective from October 1[,] 2022, through September 30, 2025 and supersedes any and all prior agreements or understandings between the parties." Dkt. No. 10-5 at 36. As such, by its very terms, the relevant CBA became effective on October 1, 2022. However, since the events at issue in this case took place after October 1, 2022, the correct effective date is irrelevant to the disposition of this matter.

James M. Hanley Federal Building and U.S. Courthouse, United States District Court, Northern District of New York, 100 S. Clinton Street, Syracuse, New York 13261 (the "Courthouse"). *See id.* at ¶ 7. Article 8 of the CBA governed Plaintiff's discipline of those employees represented by Defendant. *See id.* at ¶ 8. Article 8, Section 2 of the CBA states, in relevant part, as follows:

> Section 8.2. Serious Offenses
>
> Employees shall be subject to discipline or discharge for just cause. The Employer'[s] discipline policy is outlined in the "Constellis Progressive Disciplinary Policy" which is subject to revision from time to time. Should the Employer revise the disciplinary policy, the Union shall be provided a minimum of 14 days' prior notice of any change. It is understood that the Union reserves its right to bargain over any revisions thereto.
>
> Additionally, among the actions which may, as deemed appropriate by the Employer, result in and establish cause for discipline (including immediate dismissal) shall include, but shall not be limited to: abuse of authority; neglect of duties; breach of security; breach of the chain of command, except to the extent reasonably necessary to comply with the orders or accommodating the needs of the USMS and the Court; conduct which impugns or disparages the USMS, the Court, the Company or any of their agents or employees to the Government or other third parties, except when such conduct is privileged under specific law; inappropriate conduct directed at or involving Government employees, members of the public or contractor employees at or near federal facilities, or while in uniform; violation of the CSO Performance Standards or Deadly Force standards; dishonesty; misappropriation of funds or government or Employer resources; theft; falsification of time; falsification of official documents or records; assault; intoxication or drinking on duty, or illegal use or possession of drugs or narcotics; immoral conduct; fighting; threats; breach of building rules or regulation; post abandonment or leaving post without proper relief; sleeping or being inattentive while on duty; destruction of property; failure to properly screen; criminal misconduct or violations of the Company's EEO or harassment policies.

*Id.* at ¶ 9.

The CBA also contains a grievance-arbitration procedure. *See* Dkt. No. 11-7 at ¶ 3. Under the terms of the CBA, "[n]o employee, after completion of his or her probationary period, shall be disciplined or terminated without just cause[.]" *Id.* at ¶ 4. The CBA further provides that an arbitrator "shall have no power to add to, subtract from, or modify" any terms or conditions agreed upon between the parties in the CBA. *See* Dkt. No. 10-1 at ¶ 10.

At all times relevant to the instant action, CSO David VanDusen was a member of the Union. *See id.* at ¶ 11. On October 19, 2022, CSO VanDusen was in a Courthouse elevator with Law Clerk Ashley Johnson ("Ms. Johnson"). *See id.* at ¶ 12. When asked by CSO VanDusen, Ms. Johnson advised him what floor she was going to. *See id.* at ¶ 13. CSO VanDusen, believing that Ms. Johnson said the fourth floor, pushed the applicable elevator button. *See id.* at ¶ 14. After Ms. Johnson clarified that she was going to the fourteenth floor, CSO VanDusen replied as follows: "Well, that's good for you because there's a bunch of apple-picking Jamaicans going to the fourth floor." *Id.* at ¶ 15.

During the ensuing investigation, CSO VanDusen admitted to making the above statement to Ms. Johnson. *See id.* at ¶ 16. Plaintiff was of the belief that the foregoing comment violated the Performance Standards, the Code, and Article 8, Section 2 of the CBA. *See id.* at ¶ 17.

On November 10, 2023, Plaintiff terminated CSO VanDusen's employment effective immediately. *See id.* at ¶ 18. On November 17, 2023, Defendant filed a grievance challenging the termination. *See id.* at ¶ 19. After the parties were unable to resolve the issue through the grievance procedure, the Union submitted Plaintiff's decision to terminate CSO VanDusen to binding arbitration. *See id.* at ¶ 20.

Prior to the arbitration hearing, the parties submitted two issues for the Arbitrator to decide: (1) "Was the termination of David VanDusen for just cause?"; and (2) "If not, what shall be the remedy?" *Id.* at ¶ 21. No other issues were submitted to the Arbitrator. *See id.* at ¶ 22.

On June 15, 2023, an arbitration hearing was held at the Crowne Plaza Hotel in Syracuse, New York. *See id.* at ¶ 23. At the hearing, both parties were given a full opportunity to present opening statements and oral and documentary evidence. *See id.* at ¶ 24. In lieu of closing arguments, the parties elected to brief the two issues in question, and, upon receipt of those briefs, the Arbitrator declared the hearing closed. *See id.* at ¶ 25.

On September 8, 2023, the Arbitrator issued an Award, which contained the Arbitrator's findings of fact and conclusions of law. *See id.* at ¶ 26. The Arbitrator determined that "[t]he facts of the instant matter are, for the most part, not in dispute." *Id.* at ¶ 27. The Arbitrator held that on October 19, 2022, CSO VanDusen admitted to making the following statement to Ms. Johnson: "Well, that's good for you because there's a bunch of apple-picking Jamaicans going to the fourth floor." *Id.* at ¶ 28. The Arbitrator also stated as follows: "The Company saw this as a racist, derogatory, and unprofessional remark that was a violation of the Company's [Performance Standards] and [the Code]." *Id.* at ¶ 29. The Arbitrator agreed with Plaintiff's determination, stating as follows:

> "By any rational measure, the [G]rievant's 'apple-picking Jamaicans' comments was inappropriate conduct directed at or involving a government employee, namely Ms. Johnson, the Law Clerk. The Company is correct when it stated that it makes no difference that Ms. Johnson was not herself a so-called 'apple picking Jamaican' she was still the victim of these comments, therefore the [G]rievant's comments were a violation of the Company's *CSO Performance Standard and Code of Business Ethics*, as well as Article 8, Section 2 of the Collective Bargaining Agreement."

*Id.* at ¶ 30.

The Arbitrator also stated that "[w]hile the [G]rievant's comments were a violation of the Company's *CSO Performance Standard and Code of Business Ethics*, as well as Article 8, Section 2 of the Collective Bargaining Agreement and does call for some level of discipline ... I believe the penalty of termination in this case to be too severe." Dkt. No. 10-1 at ¶ 31. The Arbitrator held that Plaintiff "did not have just cause to terminate the [G]rievant" and reduced the termination to a written warning and a fifteen-day suspension without pay. *See id.* at ¶ 32. The Arbitrator awarded CSO VanDusen back pay, less the fifteen-day suspension and less any interim earnings or unemployment compensation that CSO VanDusen may have earned or received from the date of his termination to the date of his reinstatement. *See id.* at ¶ 33.

On November 3, 2023, Plaintiff commenced this action pursuant to Section 301 of the LMRA, 29 U.S.C. §§ 185 *et seq.*, to vacate the Arbitrator's Award. *See* Dkt. No. 1. On November 30, 2023, Defendant filed its answer to the complaint and counterclaim seeking to confirm the award. *See* Dkt. No. 5. Currently before the Court are the parties' cross motions for judgment on the pleadings or, in the alternative, for summary judgment. *See* Dkt. Nos. 1, 10 & 11.

### III. DISCUSSION

**A.   Applicable Law**

*1. Standard of Review for Labor Arbitration Awards*

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, provides that federal district courts have jurisdiction over violations of labor contracts. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536, 545 n.13 (2d Cir. 2016). Actions to confirm and vacate arbitration awards fall within the scope of Section 301. *See, e.g.*, *Local 802,*

*Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998); *Kallen v. Dist. 1199, Nat'l Union of Hosp. & Health Care Emps.*, 574 F.2d 723, 725 (2d Cir. 1978). At the same time, federal courts enforcing labor arbitration awards look to the FAA "to guide the development of rules of federal common law to govern [ ] disputes [regarding labor contracts] pursuant to the authority to develop such rules granted under 29 U.S.C. § 185." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 405 n.2 (S.D.N.Y. 2008) (citations omitted); *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987).

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). "Further, 'the federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes.'" *Supreme Oil Co.*, 568 F. Supp. 2d at 406 (quoting *N.Y. Hotel & Motel Trades Council AFL-CIO v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)). "Judicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)); *see also Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 31-32 (2d Cir. 1997) ("[A]n arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached'") (quoting *Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579

F.2d 691, 704 (2d Cir. 1978)); *see generally D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

However, "great deference ... is not the equivalent of a grant of limitless power." *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990). "An arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers." *Id.*; *see also Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ("The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission") (quotations omitted). "This rule applies not only to the arbitrator's substantive findings, but also to his choice of remedies. 'He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement.'" *Leed Architectural Prods.*, 916 F.2d at 65 (quotation omitted). An arbitrator's "award is legitimate only so long as it draws it essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.*; *see also 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (concluding that a court may vacate an award when "the arbitrator exceeds his powers" by acting beyond the scope of authority under the agreement or submission).

Generally, there are three circumstances in which a court may overturn a labor arbitration decision. First, a court may overturn an award if it has been "procured by the parties through fraud or through the arbitrator's dishonesty[.]" *Misco, Inc.*, 484 U.S. at 38. Second, a court may overturn an award that runs "contrary to an explicit, well-defined, and dominant public policy, as

ascertained by reference to positive law and not from general considerations of supposed public interest[.]" *E. Associated Coal Corp.*, 531 U.S. at 63.  And third, a court may overturn an award if it does not "'draw its essence from the collective bargaining agreement'" but instead represents "the arbitrator's 'own brand of industrial justice.'" *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 896 (2d Cir. 1997) (quoting *Enter. Wheel*, 363 U.S. at 597).  Arguments that an arbitrator exceeded his authority are analyzed under this third exception.  *See, e.g.*, *Saint Mary Home, Inc. v. Service Emps. Intern. Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (holding that, in response to a party "challenging the arbitrator's authority to render the award ... [t]he principal question for the reviewing court is whether the arbitrator's award draws its essence from the collective bargaining agreement") (quotations omitted); *see also VAW of Am., Inc. v. United Steelworkers of Am.*, 53 F. Supp. 2d 187, 191 (N.D.N.Y. 1999).

### 2. Summary Judgment Standard

District courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (citation omitted).  A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  In assessing

the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.    Application**

In the present matter, applying this extremely deferential standard, the Arbitrator's Award is confirmed.  In its complaint and motion, Plaintiff seeks vacatur on the premise that the CBA, by virtue of a single line read in isolation from other relevant provisions, precluded the Arbitrator from determining whether discipline is for just cause.  That line, from Article 8, Section 2, states that, "among the actions which may, as deemed appropriate by the Employer, result in and establish cause for discipline (including immediate dismissal) shall include, but not be limited to ... inappropriate conduct directed at or involving Government employees, members of the public or contractor employees at or near federal facilities, or while in uniform[.]" Dkt. No. 10-1 at ¶ 9

(emphasis omitted).  As Defendant correctly notes, Plaintiff's argument is wrong for several reasons.

First, Plaintiff's argument would require the Court to supplant its interpretation of the contract for that of the Arbitrator.  Binding Supreme Court precedent warns against such actions by the courts.  *See Misco, Inc.*, 484 U.S. at 38 (holding that because "the parties hav[e] authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contact") (citation omitted).  Moreover, an arbitrator's determination of his own authority need not be grounded exclusively in the CBA, as "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract;" it includes "the industrial common law," which is "equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960).  The Arbitrator here reasonably concluded that the CBA gave him the authority to determine whether Plaintiff had just cause to terminate CSO VanDusen, without regard to industrial common law, and substitute a lesser penalty if necessary.

Second, even if the Court were to entertain Plaintiff's invitation to second guess the Arbitrator's interpretation of the CBA, the CBA gave the Arbitrator the authority to determine just cause.  Contrary to Plaintiff's assertions, in the Second Circuit, a CBA provision containing a non-exhaustive list of offenses that may be cause for discipline does not on its own bar an arbitrator from determining just cause.  To the contrary, as the Second Circuit has recognized, if an employer wants to strip an arbitrator of authority to determine just cause, it must bargain explicit CBA language to that effect.  *See First Nat'l Supermarkets, Inc.*, 118 F.3d at 897; *Saint Mary Home, Inc. v. Service Emps. Intern. Union, Dist. 1199*, 116 F.3d 41, 44-45 (2d Cir. 1997) (noting that, "if they had wanted, the parties could have added a provision in the CBA that one or

more crimes would automatically be just cause for dismissal. Instead, they agreed to let the arbitrator decide the question"); *Samaritan Med. Ctr. v. Local 1199, SEIU*, No. 7:09-cv-1072, 2010 WL 2869762, *4 (N.D.N.Y. July 19, 2010) (noting that courts uphold "an arbitrator's discretion in crafting a remedy wherein 'there is no provision in the agreement that expressly limits or removes the arbitrator's authority to review or modify a penalty'") (quotation omitted); *VAW of Am., Inc.*, 53 F. Supp. 2d at 193. Here, the non-exhaustive list of offenses in Article 8, Section 2 is a far cry from the explicit language required by the Second Circuit. This result is further supported by the fact that this provision states that the listed conduct "*may* ... establish cause for discipline (including immediate dismissal)," rather than simply stating that such conduct "shall ... establish cause for immediate dismissal."

Moreover, the meaning of "just cause" is not explicitly defined anywhere in the CBA. When agreements fail to define "just cause," which is often the case, the Second Circuit has held that it is reasonable for an arbitrator "to construe it to mean just cause for the particular 'disciplinary action' taken by the [employer]." *Hill v. Staten Island Zoological Soc., Inc.*, 147 F.3d 209, 213 (2d Cir. 1998). Such a reading is appropriate here. In addition to the provisions set forth above, Article 8, Section 2 of the CBA is entitled "Progressive Discipline," which provides in relevant part as follows: "The Employer recognizes the principals of progressive discipline. Accordingly, the Employer will consider utilizing progressive steps (e.g., reprimands or warnings, followed by suspension, followed by termination), as it deems appropriate considering the circumstances." Dkt. No. 11-2 at 20. Read together with Sections 1 and 2 of Article 8, the Arbitrator's application of the just cause standard to the disciplinary action chosen by Plaintiff was appropriate. *See Hill*, 147 F.3d at 213; *see also Niagara Blower Co. v. Shopmen's Local Union 576 of Inter. Assoc. of Bridge, Structural, Ornamental, and Reinforcing Iron Workers*, 340

F. Supp. 3d 277, 281 (W.D.N.Y. 2018) (holding that the arbitrator reasonably determined that the CBA language provided that "while an employee *may* be terminated for certain infractions, that does not mean that the employer has carte blanche to terminate for those infractions. Instead, the discipline imposed still is subject to [the CBAs] proper cause standard") (emphasis in original).

Third, the parties' submission to the Arbitrator in this case gave him the authority to determine just cause, both as to whether CSO VanDusen's conduct warranted discipline under the CBA and, if so, whether the discipline imposed was supported by just cause. As noted above, the parties submitted two questions to the Arbitrator: (1) "Was the termination of David VanDusen for just cause?"; and (2) "If not, what shall be the remedy?" Dkt. No. 10-1 at ¶ 21. As the Second Circuit has observed, "parties to an arbitration may ... increase or limit the arbitrator's contractual authority by their express submission." *Hill*, 147 F.3d at 214. Had Plaintiff wanted to limit the scope of the Arbitrator's review, it could have limited his review by asking the following: "Did David VanDusen engage in conduct in violation of Article 8, Section 2 of the CBA?" In framing the questions as they did, the Arbitrator reasonably interpreted the questions as asking him to determine whether CSO VanDusen engaged in sufficiently egregious conduct to warrant discharge, rather than some lesser form of discipline. The Arbitrator reasonably found that, although CSO VanDusen engaged in "inappropriate conduct directed at or involving a government employee," the penalty imposed was too severe. *See id.*; *see also IMC-Agrico v. Int'l Chem. Workers Council*, 171 F.3d 1322, 1326 (11th Cir. 1999) ("The issue submitted to the arbitrator was whether there was just cause for [the grievant's] termination; it was not limited to whether [the grievant] had engaged in a specific type of conduct").

In its motion, Plaintiff argues that Article 8, Section 2 provides it – "not the Union, and certainly not the Arbitrator – with the discretion and authority to determine whether the nature of

13

the employee misconduct rose to the level of 'just cause.'" Dkt. No. 10-7 at 16.  Plaintiff points to the absence of any modifying adverbs, such as "reasonably," "rationally," or "fairly," prior to the words "as deemed appropriate by the Employer" as support for its position.  *See id.* at 16-17.

Some examples illustrate the potential unreasonableness of Plaintiff's position.  Article 8, Section 2 includes the following "Serious Offenses" that constitute cause for discipline (including termination): (1) "drinking on duty;" and (2) "theft." Dkt. No. 11-2 at 19.  If Plaintiff could unilaterally decide that any violation of Article 8, Section 2 constitutes just cause for discharge, rather than some lesser form of discipline, Plaintiff would have unchecked power to dismiss employees regardless of the severity of the infraction and would render the section entitled "Progressive Discipline" entirely meaningless.  For example, an employee who brought in champagne to toast a coworker's engagement and had a sip right before the end of his shift could be unilaterally terminated without an arbitrator's review because of the prohibition against "drinking on duty." Dkt. No. 11-2 at 19.  Likewise, an employee who took home a company pen without permission could similarly be terminated because the CBA prohibits "theft." *Id.*  Such extreme consequences for minor/technical violations would be insulated from review by an arbitrator if Plaintiff's interpretation of the CBA were correct.  This unreasonableness underscores that the CBA contemplates an arbitrator's review of the appropriateness of the discipline imposed on an employee for just cause even when that discipline resulted from what the CBA calls "Serious Offenses."

As discussed above, Second Circuit case law compels the same result.  "Just cause" is a term of art.  If not defined explicitly in a CBA, it is a term left purposefully to an arbitrator's review.  In *First National Supermarkets, Inc.*, 118 F.3d at 893-94, the Second Circuit recognized exactly that when it found that provisions in CBAs allowing companies to establish, maintain, and

enforce rules do not give companies the unilateral authority to decide punishment or invalidate just cause provisions in those CBAs.

In *First National*, an employee was terminated for reporting to work under the influence of prescription drugs and alcohol. *First National*, 118 F.3d at 893-94. The CBA allowed the company to promulgate a rule that prohibited using drugs on the job and provided that using drugs while on the job could result in immediate termination. *See id.* at 894. After the employee's termination was submitted to arbitration, the arbitrator found that the employee had engaged in "egregious misconduct" and had violated the company's rules. *See id.* at 895. But the arbitrator also found that even though the CBA gave the company the authority to promulgate and enforce a rule prohibiting the use of drugs on the job, the "CBA ... did not empower [the company] to determine unilaterally that the violation of those rules necessarily constituted just cause for discharge." *Id.* And the arbitrator therefore concluded that the company rules defining just cause for immediate discharge exceeded the company's authority under the CBA, even if a violation of those rules "might automatically qualify as just cause for discharge." *Id.*

In reviewing the CBA in *First National*, the Second Circuit found that it permitted discharge of employees only for just cause but did not define just cause. The Second Circuit held that under such circumstances, "and where the CBA authorizes the arbitrator to resolve disputes concerning the interpretation or application of its terms, it remains for the arbitrator to determine whether a discharge was for just cause." *Id.* at 896 (citations and quotations omitted). If the company wished to have the "unquestionable right to discharge an employee for any specified conduct," the Second Circuit said, the company "needed to negotiate for recognition of that right in the CBA." *Id.* Because the arbitrator in *First National* acted within his authority, the Second Circuit upheld the arbitral award of reinstatement. *Id.* at 897.

The remarkably similar facts here require the same result. The cases upon which Plaintiff relies do not change this result. For example, in *187 Concourse Assocs. v. Fishman*, 399 F.3d 524 (2d Cir. 2005), an employer and a terminated employee submitted two questions to an arbitrator pursuant to a CBA: "Was the [employee] discharged for just cause? If not, what shall the remedy be?" *Id.* at 526 (internal quotation marks omitted). Despite finding that the employer "had no option but to terminate" the employee, the arbitrator ordered the employee restored "to his prior ... position with a final warning." *Id.* The Second Circuit held that the arbitrator had exceeded its authority by reinstating the employee and explained that "the arbitrator's authority was limited by both the CBA and the questions submitted by the parties for arbitration.... Upon a finding of just cause, there was nothing further to be done. The arbitrator had no authority, under either the CBA or the submission, to fashion an alternative remedy." *Id.* at 527.

Here, while the questions submitted to the Arbitrator were nearly identical to those in *Fishman*, there is one significant difference. The Arbitrator in the present matter never expressly found that the termination was for just cause. Rather, the Arbitrator found that the comment at issue violated Article 8, Section 2 of the CBA – *i.e.*, it was "inappropriate conduct." *See* Dkt. No. 10-6 at 10. Immediately thereafter, the Arbitrator found as follows: "While the grievant's comments were a violation of the Company's *CSO Performance Standard and Code of Business Ethics*, as well as Article 8, Section 2 of the Collective Bargaining Agreement and does call for some level of discipline, for the reasons set forth below, I believe that the penalty of termination in this case to be too severe." *Id.* at 11. The *Fishman* decision recognizes that any relief an arbitrator may grant must be consistent with the arbitrator's specific findings. Since the Arbitrator in the present matter did not find that Plaintiff "had no option but to terminate" or similar strong language indicating a finding of "just cause," the Arbitrator was free to determine that, although

16

there was no just cause for termination, just cause did exist for some lesser form of discipline (as contemplated by the parties' second question).

The Arbitrator reasonably interpreted the CBA and the questions presented by the parties as permitting him to find that, although Plaintiff had just cause to impose some form of discipline, it lacked just cause to impose the ultimate sanction of termination. Since the arbitral award "draws its essence from the collective bargaining agreement" and offers a "colorable justification for the outcome reached," *Wackenhut Corp. v. Amalgamated Local 515 & Int'l Union, United Plant Guard Workers of Am.*, 126 F.3d 29, 31-32 (2d Cir. 1997), the award must be upheld.[3]

Accordingly, the Court grants Defendant's motion for summary judgment (Dkt. No. 11) and affirms the arbitral award.[4]

---

[3] As the Arbitrator in this case noted, by any rational measure, CSO VanDusen's "apple-picking Jamaicans" comment was inappropriate and utterly offensive. The offensiveness of the comment is even more profound when one considers where the comment was made. The core values of the federal judiciary include "fairness and impartiality in the administration of justice;" "treatment of all with dignity and respect;" and a workforce of "employees that reflects the diversity of the public it serves; an exemplary workplace in which everyone is treated with dignity and respect." Such comments have no place in an organization that is striving for such values. If this Court had the authority, which it does not, CSO VanDusen would be ordered to complete training on diversity and ethics before being permitted to work as a CSO.

[4] In its motion, Plaintiff argues that the Arbitrator exceeded his authority under the CBA to order the reinstatement of CSO VanDusen because Article 10, Section 2 precludes Plaintiff from unilaterally reinstating an employee without first receiving approval from the United States Marshals Service. *See* Dkt. No. 15 at 27-28. That provision provides in relevant part as follows: "The Arbitrator shall not have the power to order any remedial relief not contained in the Agreement, including but not limited to 'front' pay and reinstatement where the employee has been removed by the government or is no longer qualified." *Id.* at 27. First, as Plaintiff notes, this language appears to be inapplicable because CSO VanDusen was not removed "by the government;" rather, he was removed by Plaintiff. While CSO VanDusen may not have been eligible for reinstatement unless approved by the United States Marshals Service, this language does not limit the Arbitrator from ordering his reinstatement when his removal was not "by the government." Second, and regardless of the applicability of this language, the possibility of reinstatement by Plaintiff is no longer possible. As the parties note, as of October 1, 2023, Plaintiff is no longer contracted by the United States Marshals Service for the provision of CSOs. *See* Dkt. No. 11-1 at ¶ 7. Rather, Walden Security is now the contractor providing CSOs for the

(continued...)

C.     **Attorneys' Fees**

Defendant has requested attorneys' fees, arguing such an award is warranted because of Plaintiff's refusal to comply with the Award was unjustifiable. *See* Dkt. No. 19 at 14. Plaintiff, however, contends that no such award is justified in this case because its "position is, at worst, based on a 'plausible, if ultimately unsuccessful, reading of the case law and the arbitration award at issue.'" Dkt. No. 15 at 29.

"Under the prevailing American rule, in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *International Chemical Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975); *Colavito v. Hockmeyer Equipment Corp.*, 605 F. Supp. 1482, 1488 (S.D.N.Y. 1985)). "Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, does not provide for attorney's fees in actions to confirm and enforce an arbitrator's award." *Id.* (citations omitted). "Pursuant to its inherent equitable powers, however, a court may award attorney's fees when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974)) (other citation omitted). "As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" *Id.* (quotation omitted).

---

[4](...continued)
federal courts of the Second Circuit. Since it is now a legal and factual impossibility for CSO VanDusen to be reinstated with Plaintiff in his position as a CSO, this issue is now moot.

In the present matter, although the Court has ultimately disagreed with Plaintiff's arguments, it cannot be said that Plaintiff's arguments were presented "without justification" or that Plaintiff has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  Had this case been a typical contract dispute as opposed to an action to vacate an arbitration award, Plaintiff may very well have been successful.  However, the "great deference" afforded to arbitral awards, particularly in the context of labor disputes, rendered Plaintiff's arguments ultimately unpersuasive.

Considering the complexity of this case and the arguments raised, the Court does not find that Plaintiff's actions warrant the exceptional award of attorneys' fees.  Accordingly, the Court denies Defendant's request for attorneys' fees.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 11) is **GRANTED in part and DENIED in part**;[5] and the Court further

**ORDERS** that Plaintiff's motion for summary judgment and to dismiss Defendant's counterclaim (Dkt. No. 10) is **DENIED**; and the Court further

**ORDERS** the arbitral award is **CONFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

---

[5] Defendant's motion for summary judgment is denied only insofar as it seeks an award of attorneys' fees.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 9, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge